UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JILLIANNE H.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C19-1038-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by (1) not providing legally sufficient reasons for rejecting the opinions of several treating and examining medical and mental health sources; and (2) adopting a residual functional capacity ("RFC") that was not supported by substantial evidence. (Dkt. # 10 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1963 and has a high school education. AR at 239, 1071. Plaintiff has worked as a cashier, production bakery worker, trainer for a call center, banquet and restaurant manager, and waitress. *Id.* at 1016.

ORDER - 1

On October 10, 2012, Plaintiff applied for benefits, alleging disability as of January 1, 2012.[1] AR at 216-23. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 74-105. After the ALJ conducted a hearing on August 6, 2014, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 9-30. Plaintiff appealed that decision and the District Court remanded Plaintiff's case for further administrative proceedings on January 31, 2017. *Id.* 838-65. The District Court found the ALJ failed to provide sufficient reasons for rejecting the opinions of Drs. Thompson and Seville. *Id.*

The ALJ conducted a second hearing on October 16, 2018 and issued a decision finding Plaintiff not disabled prior to April 30, 2018. *Id.* at 718-35. The ALJ found Plaintiff's age category changed on that date, resulting in a finding of disability thereafter based on the Medical Vocational Guidelines. *Id.* at 734-35.

Plaintiff requested the Appeals Council review the ALJ's decision, which was denied. AR at 707-713. Therefore, the ALJ's decision is the Commissioner's final decision. Plaintiff appealed the final decision of the Commissioner to this Court.

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

---

[1] Plaintiff subsequently amended her alleged onset date to April 30, 2014.

ORDER - 2

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

#### 1. Legal Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

(citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 2. *Plaintiff's Physical Impairments*

The ALJ discounted the opinions of Drs. Thompson, Seville, and Packer that limited Plaintiff to sedentary or less work. AR at 729, 731. Plaintiff argues this constitutes harmful error because the Medical Vocational Guidelines mandate a finding of disability for individuals who

are fifty years old and are limited to sedentary work with no transferable skills. (Dkt. # 10 at 4 (citing 20 C.F.R. pt. 404, subpt. P, app. 2).) Plaintiff argues the ALJ would have found her disabled if he had accepted Drs., Thompson, Seville, and Packer's limitations to sedentary or less work because she was fifty years old at the time of her amended onset date. (*Id.* at 4-5.) Because these opinions are contradicted, the ALJ was required to provide specific and legitimate reasons for rejecting them. The Court will address each opinion below.

a. Rodney Thompson, M.D.

Dr. Thompson, Plaintiff's treating physician, provided several opinion forms regarding Plaintiff's impairments. AR at 516-17, 522-39, 543-45, 1257-60. Dr. Thompson opined several times that Plaintiff has cervical and lumbar spine impairments which limit her to sedentary work that would require her to be able to lift a maximum of ten pounds and sit, walk, and stand for only brief periods. *Id.* Dr. Thompson also provided a more detailed opinion in 2012 which limited Plaintiff to carrying less than ten pounds, walking only two blocks without rest, and to sitting and standing/walking for four hours in an eight-hour work day. *Id.* at 543-45.

The ALJ assigned Dr. Thompson's opinions little weight because he found they were inconsistent with the longitudinal record. AR at 729. The ALJ found Dr. Thompson did not provide a complete evaluation with objective findings that were consistent with the limitations in his opinion forms. *Id.* The ALJ also found that Dr. Thompson's treatment notes lacked detailed evaluations showing objective abnormalities regarding Plaintiff's neck and lumbar to support the limitations in his opinion forms. *Id.* The ALJ noted that although some records showed reduced motion in Plaintiff's cervical and lumbar spine, most records showed Plaintiff presented as pleasant, in no acute distress, and with no abnormalities or difficulties in her movement. *Id.* at 730. The ALJ further noted records showed Plaintiff has normal muscle tone and strength,

coordination, sensation, and reflexes in both her upper and lower extremities. *Id.* (citing *id.* at 386, 705, 1075-76, 1083-84, 1092-93, 1099-100, 1107-08, 1293-1301).

Plaintiff argues the ALJ erred in discounting Dr. Thompson's opinions because rather than interpreting the medical evidence by weighing the different opinions, the ALJ based his evaluation on his own medical opinions. (Dkt. # 10 at 6.) In support of her argument, Plaintiff cites to medical evidence that she asserts supports the severity of Dr. Thompson's opined limitations. (*Id.* at 6-8.) Plaintiff also generally asserts that Dr. Thompson provided a basis for each of his opinion forms and that because he oversaw her treatment as her primary care provider, his opinions should be read in conjunction with specialists who evaluated Plaintiff. (*Id.* at 8.)

The Commissioner agues it is the role of the ALJ to resolve conflicts in the record and that Plaintiff's citation to specific medical evidence is just an alternative interpretation that is insufficient to overturn the ALJ's findings. (Dkt. # 11 at 5.) The Commissioner also argues that discrepancies between a provider's clinical notes and opinion is a sufficient reason to discount a medical opinion and therefore the fact that Dr. Thompson's notes largely show no abnormalities is a specific and legitimate reason to reject his opinion. (*Id.* at 3)

Here, the ALJ could reasonably discount Dr. Thompson's opinion due to a lack of objective findings showing the severity of opined limitations in the treatment notes and the lack of an evaluation supporting his opinion forms. *Bayliss*, 427 F.3d at 1216. The ALJ cited to records showing Plaintiff mostly presented without abnormalities, which the ALJ could reasonably find inconsistent with Dr. Thompson's opinions. Plaintiff's citation to other medical

evidence proposes an alternative interpretation of the medical evidence which the Court declines to adopt as the ALJ's interpretation is rational.[2] *Thomas*, 278 F.3d at 954.

The ALJ also found the severity of the limitations opined by Dr. Thompson were inconsistent with Plaintiff's conservative treatment of medication and physical therapy during the relevant time period. AR at 730. The ALJ further noted Plaintiff was discharged from physical therapy because she failed to follow up after her first visit, indicating Plaintiff's impairments were less severe than suggested by Dr. Thompson. *Id.* Plaintiff argues these reasons were insufficient to discount Dr. Thompson's opinion because Plaintiff had unsuccessful neck surgery, was afraid to have further recommended surgery, and that the ALJ made an unreasonable inference that providers would have recommended more aggressive treatment if Plaintiff's impairments had been more severe. (Dkt. # 10 at 8.) Plaintiff also argues the ALJ erred in referencing Plaintiff's discontinuance of physical therapy since the record does not specify why she failed to follow up after her first visit. (*Id.* at 9.)

Plaintiff's arguments are unpersuasive. First, Plaintiff does not specifically identify which surgery she refers to and it appears from the record Plaintiff did not have surgery during the relevant time period. Second, Plaintiff stated that during her last surgery, she aspirated which resulted in an induced coma and therefore did not want to have any more surgeries because she has "a hard time breathing." AR at 750-51. As noted by the ALJ, the provider specifically stated that Plaintiff would not require general anesthesia for the recommended surgery. AR at 1301.

---

[2] The Court notes that while the records cited by Plaintiff do show abnormalities, they also often show mild to moderate impairments. *See, e.g.,* AR at 548 (finding mild disc bulge that appears stable and very mild canal and mild right-sided lateral recess narrowing), 1272 (finding only slight foraminal narrowing and otherwise stable variable multilevel degenerative disc disease, spondylosis, and facet arthropathy with stable postoperative changes), 1273 (finding only mild disc bulge that appears stable and very mild canal and mild right-sided lateral recess).

The ALJ could reasonably infer that Plaintiff would have proceeded with surgery that would not risk an aspiration injury if her symptoms were as severe as Dr. Thompson opined. Lastly, the ALJ could reasonably infer that the record shows Plaintiff, despite her alleged severe pain symptoms, failed to follow through with physical therapy. Even if Plaintiff had proffered an alternative reasonable explanation for not following through with physical therapy, which she did not, it is not this Court's role to second-guess the reasonable conclusions reached by the ALJ. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Thompson's opinions.

b. Brent Packer, M.D.

Dr. Packer reviewed and adopted Dr. Thompson's medical opinion. AR at 1240-41. The ALJ rejected Dr. Packer's opinion for the same reasons he rejected Dr. Thompson's opinion. *Id.* at 731. The ALJ further noted that although Dr. Packer indicated that his opined limitation to less than sedentary work included limitations due to carpal tunnel syndrome, Dr. Packer did not identify any specific manipulative restricts and that his assessment regarding the Plaintiff's carpal tunnel syndrome was inconsistent with the record showing unremarkable hand function. *Id.* (citing *id.* at 1075-76, 1083-84, 1092-93, 1099-1100, 1107-08).

Plaintiff takes issue with the ALJ's finding that Dr. Packer based his opinion solely on carpal tunnel syndrome. (Dkt. # 10 at 10-11.) Plaintiff cites to the list of evidence Dr. Packer included in his opinion, including, *inter alia*, cysts, records reporting shoulder pain after arthroscopic surgery and neck pain after a C5-6 fusion, and bilateral hypothenar atrophy. (*Id.*) Plaintiff's argument misstates the ALJ's reasoning. The ALJ noted that Dr. Packer "indicated that the limitation to less than sedentary work *included* limitations due to carpal tunnel

syndrome." AR at 731 (emphasis added) (citing 1240-41). The ALJ then found Dr. Packer's assessment regarding Plaintiff's carpal tunnel syndrome was inconsistent with the record showing typically unremarkable hand function. *Id.* Accordingly, the ALJ did not find Dr. Packer based his opinion solely on Plaintiff's carpal tunnel syndrome. As the ALJ properly rejected Dr. Packer's opinion for the same reason he rejected Dr. Thompson's opinions, the Court finds the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Packer's opinion.

            c.        Paul Seville, M.D.

Dr. Seville conducted a physical disability evaluation of Plaintiff in December 2012. AR at 375-78. Dr. Seville opined that Plaintiff's standing and walking capacity was limited to at least two hours, her sitting capacity was limited to at least four hours, and that her lifting and carrying capacity was less than ten pounds occasionally and frequently. *Id.* Dr. Seville opined Plaintiff had limited motion in her neck because he observed she had to move her chair to look at him. *Id.* at 377.

Similar to the ALJ's evaluation of Drs. Thompson and Packer's opinions, the ALJ also found Dr. Seville's opinion was inconsistent with the record. AR at 729. The ALJ noted most records do not indicate notable abnormalities in Plaintiff's range of motion and Plaintiff typically presented as pleasant, in no acute distress, able to move her extremities without difficulty, and had no abnormalities in her gait. *Id.* (citing *id.* at 386, 705, 1075-76, 1083-84, 1092-93, 1099-100, 1107-08, 1293-1301). The ALJ also concluded Dr. Seville's observation regarding Plaintiff's restricted neck movement was not reflected in the overall record and was inconsistent with Plaintiff's ability to drive on a regular basis. *Id.* Lastly, the ALJ found Plaintiff only required conservative treatment and that she failed to follow through with physical therapy. *Id.*

Plaintiff argues the ALJ erred in rejecting Dr. Seville's opinion because Dr. Seville supported his opinion with objective medical findings regarding her decreased range of motion and motor functions in her extremities and hips. (Dkt. # 10 at 10.) Plaintiff also argues Dr. Seville's opinion is consistent with Dr. Thompson's opinion. (*Id.*) Plaintiff further argues that with regard to Plaintiff's restricted neck movement, another medical provider noted Plaintiff favored looking left. (*Id.* (citing AR at 1300).) Plaintiff also argues the ALJ did not establish whether Plaintiff turned her head and neck while driving. (*Id.*)

Plaintiff's arguments reiterate her assertion that the ALJ's evaluation of the medical evidence is unreasonable and the Court should adopt her alternative interpretation. Because the ALJ could reasonably find the medical evidence was inconsistent with the severity of Dr. Seville's opined limitation, the Court declines Plaintiff's request. Further, Dr. Thompson's opinions were properly discounted and therefore any consistency with Dr. Seville's opinion does not constitute error. The ALJ could also reasonably infer that Plaintiff moved her neck in order to drive on a regular basis, and therefore find Dr. Seville's observation that she had to turn her chair to view him was inconsistent with her activities. Additionally, the fact that one medical note states Plaintiff favors looking left does not undermine the ALJ's finding that Dr. Seville's opined neck movement limitation is not reflected in the record. Accordingly the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Seville's opinion.

The Court notes the ALJ also discounted Dr. Seville's opinion because he found Dr. Seville did not have the "full diagnostic picture" on which to form an opinion because he only conducted a one-time evaluation and that even though his opinion states he reviewed records, Dr. Seville did not specify which records. AR at 729. This is not a specific and legitimate reasons to

discount Dr. Seville's opinion because it is not uncommon for examining medical sources to have performed only one evaluation of a claimant and although it is unclear which records were reviewed, the record indicates Dr. Seville reviewed at least some records as of the date of the opinion. However, any error in this reasoning is harmless because of the specific and legitimate reasons, supported by substantial evidence, that the ALJ provided. *Carmickle,* 533 F.3d at 1162–63. Accordingly, the ALJ did not err in evaluating the opinions of Drs. Thompson, Packer, and Seville.

### 3. *Plaintiff's Mental Impairments*

#### a. Anne Spreng, M.Ed., LMHC

Ms. Spreng, a mental health counselor, completed Department of Social Health Services forms in September 2014, June 2015, and June 2016. AR at 1242-52. Ms. Spreng opined that Plaintiff suffers from anxiety, depression, PTSD, and dissociation. *Id.* She opined that Plaintiff would be limited to zero hours of work per week. *Id.* Ms. Spreng also opined Plaintiff had pain and neuropathy that impaired her ability to physically sit or stand for long periods. *Id.* at 1242.

The ALJ found Ms. Spreng's assessments to be conclusory and unsupported. AR at 732. Specifically, the ALJ found her opinion regarding Plaintiffs limitation to zero hours of work did not indicate specific vocational restrictions and that the determination of whether Plaintiff can work is reserved for the Commissioner. *Id.* Further, the ALJ found Ms. Spreng did not complete an evaluation with formal mental status finding and her opinions were inconsistent with the longitudinal record showing Plaintiff typically presented as pleasant and in no distress, had normal mood, affect, and behavior, and had no problems interacting appropriately with providers. *Id.* (citing *id.* at 1075-76, 1083-84, 1092, 1099, 1107, 1136, 1139, 1143-44, 1148, 1150, 1293, 1344, 1346, 1348, 1351). Lastly, the ALJ also found Ms. Spreng is not a medical

doctor and therefore not qualified to make conclusions regarding Plaintiff's physical impairments. *Id.*

Plaintiff reiterates her argument that the ALJ erred in rejecting this opinion as being inconsistent with the medical record, asserting that the ALJ based his assessment on his own interpretation of the mental health findings. (Dkt. # 10 at 14.) Plaintiff also asserts the ALJ's reliance on other psychological examiners showing normal findings does not account for the progression of her mental impairments. (*Id.*) Plaintiff asserts the ALJ erred in citing to medical notes from Dr. Thompson showing Plaintiff displayed normal mental findings because Dr. Thompson was treating Plaintiff for her physical conditions. (*Id.* at 14-15.) Plaintiff also asserts Ms. Spreng was qualified to consider Plaintiff's physical impairments to assess the impact they had on her mental health. (*Id.* at 16.)

Unlike Drs. Walker, Nestler, and Uhl, discussed below, Ms. Spreng is a mental health counselor. Mental health counselors are not considered "acceptable medical sources" under the regulations in effect at the time of Plaintiff's application. *See* 20 C.F.R. § 404.1513(d); *McGee v. Astrue*, 368 F. App'x 825, 828 (9th Cir. 2010). These sources "are not entitled to the same deference" as acceptable medical sources, and therefore the ALJ needs to give only "reasons germane" to the source to discount its testimony. *Molina*, 674 F.3d at 1111 (citing 20 C.F.R. § 404.1527; Social Security Ruling (SSR) 06–03p).

Here, the ALJ provided several germane reasons for discounting Ms. Spreng's opinion. Similar to the ALJ's evaluation of the medical evidence regarding Plaintiff's physical impairments, the ALJ also reasonably evaluating the mental health medical evidence. The ALJ cited to records showing Plaintiff typically presented with normal mood and affect, which conflicted with Ms. Spreng's opinions. It is the ALJ's responsibility to resolve conflicts in

medical evidence and the Court declines to overturn the ALJ's findings based on Plaintiff's alternative interpretation of the evidence. *Andrews*, 53 F.3d at 1039. The ALJ could also reasonably discount Ms. Spreng's opinions regarding Plaintiff's physical function and mobility in light of the contrary opinions of other medical providers, such as Dr. Snyder, which Plaintiff did not challenge. *Molina*, 674 F.3d at 1112 (ALJ properly considered that an opinion was inconsistent with a source who specialized in the field of psychiatry and "whose opinion was therefore entitled to greater weight."). Lastly, the ALJ accurately noted that the determination of whether Plaintiff is able work is reserved for the Commissioner. *See* 20 CFR 404.1520b(c)(3). Accordingly, the ALJ provided germane reasons for discounting Ms. Spreng's opinion.

                                      b.        Ellen Walker, Ph.D.

Dr. Walker completed a psychological evaluation of Plaintiff in July 2016. AR at 1160-63. Dr. Walker opined Plaintiff had severe limitations in understanding, remembering, persisting in tasks, in adapting to changes in a routine work setting, communicating and performing effectively in a work setting, and completing a normal work schedule without interruptions from her psychological symptoms. *Id.* at 1162.

The ALJ discounted Dr. Walker's opinion because he found it was inconsistent with the overall record. *Id.* at 732. The ALJ cited to Dr. Parlatore's psychological examination of Plaintiff from 2013. *Id.* (citing *id.* at 379-83). Dr. Parlatore opined Plaintiff was articulate, cogent, coherent, intelligent, lucid, and logical; was able to recall three out of four objects after a fifteen-minute delay; and rapidly calculate serial sevens. *Id.* at 379-83. The ALJ also cited to records from treating provider Dr. Thompson which showed Plaintiff either rarely reported mental symptoms, reported her mental symptoms were controlled with medication, or denied mental symptoms altogether. *Id.* (citing, *e.g.*, *id.* at 1136, 1200, 1348-49). Moreover, the ALJ cited to

ORDER - 13

other records showing Plaintiff presented as pleasant, in no distress, fully oriented, with normal mood and affect, and interacted appropriately with providers. *Id.* (citing *id.* at 1075-76, 1083-84, 1092, 1099, 1107). Lastly, the ALJ found many of Plaintiff's concerns focused on problems with her teenage daughter's behavior, a situational stressor, that would not be present in a vocational setting. *Id.*[3]

Plaintiff asserts the ALJ erred in finding Dr. Walker's opinion inconsistent with the record because the ALJ inserted his own interpretation of the medical evidence. (Dkt. # 10 at 14.) For the reasons discussed with regard to Drs. Thompson, Packer, and Seville, Plaintiff's argument is unpersuasive. The ALJ's interpretation that the record shows Plaintiff's mental symptoms were less severe than opined by Dr. Walker is rational and the Court declines to adopt Plaintiff's alternative interpretation. Plaintiff also argues the ALJ's evaluation does not account for any progression of Plaintiff's symptoms. This argument is just another assertion that the Court should adopt Plaintiff's interpretation of the medical evidence.

Plaintiff also argues that although the mental health records show Plaintiff has concerns with her daughter, they also show the focus of her mental symptoms include intrusive memories regarding her childhood trauma, dissociation, memory and concentration issues, and her struggles with her physical impairments. (*Id.* at 15.) Social Security disability determinations are based on medically determinable impairments, not situational stressors. *See* 20 C.F.R. § 404.1505 (disability is inability to work "by reason of any medically determinable physical or mental impairment"). However, to the extent the ALJ omitted other, non-situational stressors in

---

[3] The ALJ also discounted the opinions of Drs. Walker, Nestler, and Uhl because they only saw Plaintiff on one occasion and reviewed no treatment records and little to no other evidence. AR at 731. Plaintiff makes no argument with regard to these reasons. To the extent the ALJ erred in relying on these reasons, any error is harmless because of the specific and legitimate reasons, supported by substantial evidence, provided by the ALJ. *Carmickle,* 533 F.3d at 1162–63.

ORDER - 14

his determination of the focus of Plaintiff's mental impairments, any error is harmless given the other specific and legitimate reason, supported by substantial evidence, provided by the ALJ. *Carmickle,* 533 F.3d at 1162–63.

        c.      K. Nestler, M.D.

Dr. Nestler evaluated Plaintiff in February 2017. AR at 1222-26. Dr. Nestler opined Plaintiff would have difficulty accepting instructions from supervisors and in interacting with coworkers and the public due to her anxiety and depression. *Id.* at 1226. Dr. Nestler also opined Plaintiff would have difficulty completing a normal workday and workweek without interruptions from her symptoms and would have difficulty dealing with usual workplace stressors. *Id.* Dr. Nestler further opined Plaintiff displayed poor interpersonal skills and appeared initially overwhelmed throughout the interview. *Id.*

The ALJ discounted Dr. Nestler's opinion for the same reasons he discounted Dr. Walker's opinion, namely that it is inconsistent with the record. *Id.* at 731. Specifically, the ALJ found the severity of limitations opined by Dr. Nestler are not consistent with records showing Plaintiff rarely displayed mental symptoms and instead appeared in no distress with normal mood and affect. *Id.* at 732. The ALJ also found Plaintiff reported medications controlled her symptoms or she denied symptoms altogether. *Id.* The ALJ also noted Dr. Nestler reported Plaintiff was a poor historian and that some of Plaintiff's reported symptoms were not in any of the prior evidence reviewed by Dr. Nestler. *Id.* For example, Dr. Nestler reviewed Dr. Parlatore's evaluation which found Plaintiff's memory, concentration, pace, and persistence organically, cognitively intact and that Plaintiff seemed to have no problems with her social interaction and adaptation. *Id.* at 383. Dr. Nestler further noted inconsistencies regarding Plaintiff's report of

poor concentration. *Id.* Lastly, Dr. Nestler indicated it would be helpful to review Plaintiff's outpatient mental health records. *Id.* at 1226.

As noted above, Plaintiff asserts the same arguments against the ALJ's reasoning in discounting Dr. Nestler's opinion that she does with regard to Dr. Walker's opinion because he found it inconsistent with the record. For the reasons discussed above, the Court finds the ALJ could reasonably conclude the severity of Dr. Nestler's opined limitations were inconsistent with record. The ALJ therefore provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Nestler's opinion. To the extent the ALJ erred in discounting Dr. Nestler's opinion because he found Plaintiff's mental impairments focused on the situational stressor of her daughter's behavior, any error is harmless because of the specific and legitimate reasons, supported by substantial evidence, that the ALJ provided. *Carmickle,* 533 F.3d at 1162–63.

                                          d.       W. Douglas Uhl, Psy.D.

Dr. Uhl conducted a psychological evaluation of Plaintiff in May 2018. AR at 1310-20. Dr. Uhl opined Plaintiff has marked impairments in learning new tasks and moderate impairments with her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes, make simple work-related decisions, be aware of normal hazards, request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior, set realistic goals, and plan independently. *Id* at 1311-12. Dr. Uhl opined the combined impact of her impairments was moderate and the duration of the impairments would be nine to eleven months. *Id.* at 1312.

The ALJ discounted Dr. Uhl's opinion for the same reasons he discounted Drs. Walker and Nestler's opinions, and Plaintiff asserts the same arguments against the ALJ's reasoning. *Id.*

at 731; (Dkt. # 10 at 13-15). For the reasons discussed above, the ALJ could reasonably discount the severity of Dr. Uhl's opinion regarding Plaintiff's impairments in light of the longitudinal record showing Plaintiff typically presented with normal mood and affect.

### B. The ALJ Did Not Err in Determining Plaintiff's RFC

At step five, the ALJ determined Plaintiff could perform light work with limitations. In relevant part, the ALJ found Plaintiff would be off tasks at work 5% of the time but would still meet minimum production standards and would be absent from work one time every two months. AR at 723. Plaintiff argues the ALJ provided no explanation for how he determined what amount of time Plaintiff would be off task and absent from work. (Dkt. # 10 at 16-17.) Plaintiff therefore asserts the RFC assessment appears to be result-based and not supported by substantial evidence (*Id.*)

The Commissioner argues the ALJ's RFC determination was reasonable because an RFC finding need only be consistent with a provider's assessed limitation. (Dkt. # 11 at 13 (citing *Turner v. Comm'r of Soc, Sec.,* 613 F.3d 1217, 1223 (9th Cir 2010).) The Commissioner asserts the ALJ gave significant weight to the opinions of the State agency reviewing psychological consultants who opined Plaintiff's concentration, persistence, and pace would "wax and wane at times," but that she would still have adequate ability to perform even detailed and complex tasks. (*Id.* (citing AR at 86, 118, 730).) The Commissioner asserts that the ALJ accounted for these limitations by finding Plaintiff would be off-task 5% of the time. (*Id.*) The Commissioner further argues that even if the ALJ failed to cite to substantial evidence to justify these restrictions, inclusion of these limitations benefitted rather than prejudiced Plaintiff. (*Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (finding harmless an ALJ's "overinclusion" of

functional limitations in the hypothetical posed to a vocational expert because it benefitted the claimant).)

An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite her limitations. SSR 96-8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," e.g., eight hours a day, five days a week. *Reddick*, 157 F.3d at 724; *Lester*, 81 F.3d at 833; SSR 96-8p.

Here, the ALJ assessment regarding the amount of time Plaintiff would be off-task or absent from work may appear result-oriented because the ALJ did not provide a specific explanation regarding the record evidence he used to support his finding. However, Plaintiff has not pointed to any evidence showing that she is more limited than the ALJ found in the RFC assessment. As noted by the Commissioner, the State Agency reviewing psychological consultants opined Plaintiff's concentration, persistence, and pace would "wax and wane at times," but that she would still have adequate ability to perform even detailed and complex tasks. AR at 86, 118, 730. The ALJ gave these opinions significant weight and the RFC assessment is consistent with those opinions. *Id.* at 730. Thus, the Court rejects Plaintiff's argument that the ALJ's RFC assessment lacks support in the record, and finds the Plaintiff has not met her burden to show harmful error in the RFC assessment.

## V. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's final decision be AFFIRMED and this case DISMISSED with prejudice.

ORDER - 18

Dated this 10th day of March, 2020.

                                                   MICHELLE L. PETERSON
                                                   United States Magistrate Judge